**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MICHELLE MCCALLA, ROGER EVANS, SARAH SMITH, BIANCA CRAIGWELL, JAMES HANNA, KHIRAH WALLACE-GAYLE, and LAKESHA LOCKETT, individually and on behalf of all others similarly situated, | ) | **CIVIL ACTION NO.:** |
| Plaintiff, | ) | |
| v. | ) | |
| USI INSURANCE SERVICES, LLC, | ) | |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiffs, Michelle McCalla, Roger Evans, Sarah Smith, Bianca Craigwell, James Hanna, Khirah Wallace-Gayle, and Lakesha Lockett ("Plaintiffs"), by and through their attorneys, on behalf of the USI Insurance Services, LLC Employee Benefit Plan (the "Plan"),[1] themselves and all others similarly situated, state and allege as follows:

## I. INTRODUCTION

1. This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciary, USI Insurance Services, LLC ("USI Insurance" or "Company") for breaches of its fiduciary duties.

2. Plaintiffs bring this action to redress prohibited transactions and self-dealing in violation of 29 U.S.C. § 1106(b) by USI Insurance, which acted as a fiduciary to the Plan in

[1] The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

connection with the selection, marketing, and placement of voluntary benefits and the receipt of compensation derived from participant-paid premiums. As explained below, USI Insurance exercised fiduciary authority to select and maintain insurance arrangements for the Plan from which USI Insurance itself received millions of dollars of compensation; USI Insurance participated in determining the amount and structure of that compensation.

3. The Plan is an employee welfare benefit plan governed by ERISA, 29 U.S.C. § 1002(1), that offered voluntary benefit products to Plan participants, including but not limited to vision, life insurance, long-term disability, accidental death and dismemberment, business travel accident, telehealth, critical illness, long term care, and other similar coverages funded through payroll-deducted, participant-paid premiums.

4. In the voluntary benefits market, insurance carriers do not set premium rates independently and then separately negotiate broker compensation.[2] Rather, the process works in reverse. USI Insurance, as the broker, specifies the commission structure. That structure can be a "heaped" commission (a high first-year payout followed by lower renewal rates) or a "level" commission (a consistent percentage paid every year).[3]

5. As the broker, USI Insurance also sets the benefits administration fee, an additional cost that compensates USI Insurance for consulting, providing ongoing services, additional commission or compensation and for enrollment firms (specialized third-party companies that

---

[2] *See* Mployer Team, *Insurance Broker vs. Carrier* (Updated August 14, 2023), https://mployeradvisor.com/blog/insurance-broker-vs-carrier ("this commission is built into the premiums paid by policyholders every month. Thus, it's not a separate payment, but included in the price of the policy purchased through the broker.").

[3] *See* Trevor & Heather Garbers, The Commission Conundrum (March 2023), https://issuu.com/voluntary-advantage/docs/vb_voice_-_march_2023/6?e=8&o=1.

manage communication, education, technology and sign-up process) for technology platforms and enrollment support services.

6. The insurance carrier will include the commission and administration fee into the premium rate structure that participants pay. In doing so, the insurance carrier prices the product to achieve its target profitability after accounting for any commissions, the administration fees, its own administrative costs, and its profit margin. Thus, in the instant case, the participants' premium payments are a direct function of USI Insurance's compensation demands. When USI Insurance demands more, the carrier charges more, and participants pay more.

7. Defendant, while acting with respect to the management or disposition of Plan assets, engaged in self-dealing by setting, collecting and retaining commission compensation and administration fees out of Plan assets, in contravention of ERISA.

8. Defendant failed to avoid self-dealing and conflicts of interest, and failed to ensure that any compensation received from dealing with the Plan complied with ERISA's strict prohibitions under 29 U.S.C. § 1106(b), including by obtaining appropriate authorization and ensuring that any compensation did not result from Defendant acting in any transaction involving the Plan on behalf of a party whose interests were adverse to those of the Plan and its participants.

9. Defendant's compensation structure and receipt of commissions and administration fees influenced or had the tendency to influence its recommendations and actions regarding the selection, marketing, and placement of voluntary benefits, and the level and cost of those benefits to participants.

10. Plaintiffs, on behalf of themselves, the Plan, and the class of similarly situated Plan participants, seek equitable relief including restitution and disgorgement of ill-gotten commissions and profits, pursuant to 29 U.S.C. § 1132(a).

11. Based on this conduct, Plaintiffs assert claims against Defendant for engaging in ERISA's prohibited transactions (Count I), and breach of the fiduciary duty of loyalty (Count II).

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq*.

7. This Court has personal jurisdiction over Defendant because Defendant transacts business in this District, resides in this District, and/or has significant contacts with this District, and because ERISA provides for nationwide service of process.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Plan is administered in this District, the alleged breaches took place in this District, and/or Defendant may be found in or transacts business in this District.

## III. PARTIES

### Plaintiffs

9. Plaintiff Michelle McCalla ("McCalla") resides in Far Rockaway, New York. Plaintiff McCalla is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit products placed and administered with the involvement of Defendant, including vision, life insurance, long-term disability, accidental death and dismemberment, business travel accident, telehealth, and critical illness.

10. Plaintiff Roger Evans ("Evans") resides in Raleigh, North Carolina. Plaintiff Evans is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit products

placed and administered with the involvement of Defendant, including vision, life insurance, and accident.

11. Plaintiff Sarah Smith ("Smith") resides in Farmington, New York. Plaintiff Smith is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit products placed and administered with the involvement of Defendant, including life insurance and critical illness.

12. Plaintiff Bianca Craigwell ("Craigwell") resides in Houston, Texas. Plaintiff Craigwell is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit products placed and administered with the involvement of Defendant, including life insurance and long-term disability.

13. Plaintiff James Hanna ("Hanna") resides in Virginia Beach, Virginia. Plaintiff Hanna is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit products placed and administered with the involvement of Defendant, including life insurance, accident and critical illness.

14. Plaintiff Khirah Wallace-Gayle ("Wallace-Gayle") resides in Richardson, Texas. Plaintiff Wallace-Gayle is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit products placed and administered with the involvement of Defendant, including accident.

15. Plaintiff Lakesha Lockett ("Lockett") resides in Atlanta, Georgia. Plaintiff Lockett is a participant and beneficiary of the Plan, and paid premiums for voluntary benefit products placed and administered with the involvement of Defendant, including life insurance.

16. Plaintiffs have standing to bring this action on behalf of the Plan because they participated in the Plan, paid premiums for voluntary benefit products, and were injured by Defendant's unlawful conduct.

17. Plaintiffs did not have knowledge of all material facts necessary to understand that Defendant breached its fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

**Defendant**

18. USI Insurance Services, LLC is the sponsor and a named fiduciary of the Plan with a principal place of business at 100 Summit Lake Drive, Valhalla, New York. *See* 2024 Form 5500 for the Plan, at 1-2. USI Insurance engages in brokerage and consulting services related to employee benefit plans, including voluntary benefits plans.

19. At all relevant times, USI Insurance acted as a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A) with respect to the Plan and/or Plan assets by, among other things, exercising discretionary authority or control over plan management or assets, and/or having discretionary authority or responsibility in plan management and administration.

20. USI Insurance occupied both sides of the voluntary benefits transactions. In its capacity as Plan sponsor and fiduciary, USI Insurance exercised authority and discretion concerning which carriers and products would be made available through the Plan and on what terms. At the same time, in its capacity as broker and benefits consultant, USI Insurance stood to receive commissions and other compensation generated by the very insurance arrangements that it selected, recommended, retained, and administered for the Plan.

21. Upon information and belief, USI Insurance also exercised authority or influence over the amount and structure of the compensation payable to itself, including whether

compensation would be paid as a level commission, a heaped commission, a flat annual commission, an administration fee, or another form of carrier-paid or premium-funded compensation. Thus, USI Insurance was not merely collecting compensation fixed in advance by an independent fiduciary in an arm's-length transaction; rather, it had the ability to affect the compensation it would receive through decisions concerning the Plan's voluntary benefit arrangements.

22. Accordingly, USI Insurance during the putative Class Period is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

## IV. CLASS ACTION ALLEGATIONS

23. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following proposed class ("Class"):[4]

> All persons who were participants in the Plan, and who were participants in voluntary benefit products placed and administered with the involvement of Defendant at any time between September 8, 2020 through the date of judgment (the "Class Period").

24. The members of the Class are so numerous that joinder of all members is impractical. At the start of the Class Period, there were 8,177 active participants. *See* 2020 Form 5500 for the Plan, at 2. By 2024, there were 10,500 active participants. *See* 2024 Form 5500 for the Plan, at 2. Many of the Plan's participants paid premiums for the voluntary benefits offered under the Plan.

25. Plaintiffs' claims are typical of the claims of the members of the Class. Like other Class members, Plaintiffs participated in the Plan, and were participants in voluntary benefit products that were selected and administered with the involvement of Defendant. Plaintiffs have

---

[4] Plaintiffs reserve the right to propose other or additional classes or subclasses in this motion for class certification or subsequent pleadings in this action.

suffered injuries as a result of Defendant's mismanagement of the Plan. Defendant treated Plaintiffs consistently with other Class members. Plaintiffs' claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendant as alleged herein, and all members of the Class have been similarly affected by Defendant's wrongful conduct.

26. There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

A. Whether Defendant is/was a fiduciary of the Plan;

B. Whether Defendant breached its fiduciary duty of loyalty by engaging in the conduct described herein;

C. Whether Defendant committed prohibited transactions by engaging in the conduct described herein;

D. The proper form of equitable and injunctive relief; and

E. The proper measure of monetary relief.

27. Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

28. This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of

separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

29. In the alternative, certification under Rule 23(b)(2) is warranted because the Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## V. DEFENDANT HAS BEEN ENGAGING IN PROHIBITED SELF-DEALING WITH THE PLAN

### A. The Plan

30. In addition to traditional employee welfare benefits, employers often provide their employees with the opportunity to purchase voluntary benefits, such as vision, life insurance, long-term disability, accidental death and dismemberment, business travel accident, telehealth, critical illness, long term care, and other similar coverages. Unlike traditional benefits, which are usually subsidized by the employer, the entire cost of these voluntary benefits is paid by the employee through a payroll deduction.

31. Voluntary benefits have existed for decades, but recent market trends indicate that employers increasingly offer voluntary benefits "because they allow employers to expand the benefits package without absorbing significant direct cost, while giving employees options that feel relevant to their specific needs and life stage."[5]

[5] Selerix, *9 Employee Benefits Trends Shaping 2026* (July 10, 2026), https://selerix.com/blog/trends-in-employee-benefits/.

32. Employers who sponsor voluntary benefits plans must comply with ERISA unless the plans qualifies for the Department of Labor's specific "safe harbor" exemption.[6] "For a benefit to be exempt from ERISA as a voluntary benefit, the benefit must meet each of the following requirements:

> 1. No contributions are made by the employer;
> 2. Participation in the benefit program is completely voluntary for employees;
> 3. The only function the employer provides is, without 'endorsing' the program: (i) permitting the insurer of the plans to publicize the program to employees or members, (ii) collecting premiums through payroll deductions, and (iii) remitting those premiums to the insurer; and
> 4. The employer receives no consideration — in the form of cash or otherwise — in connection with the benefit program, other than reasonable compensation for administrative services actually rendered in connection with payroll deductions or dues checkoffs.[7] The employer may not make any profit from providing such administrative services."[8]

*Id*.

33. USI Insurance concedes through the filing of the Plan's Form 5500s that the Plan is subject to ERISA. *See* 2024 Form 5500 for the Plan, at 1 ("This form is required to be filed for

[6] *See* Grace Elliot & Laura L. Ferguson, *Are Your 'Voluntary Benefits' Really Exempt From ERISA? It's Worth Checking* (Apr. 22, 2026), https://www.troutman.com/insights/are-your-voluntary-benefits-really-exempt-from-erisa-its-worth-checking/.
[7] *See* Labor Regulation § 2510.3-1(j).
[8] Elliot & Ferguson, *supra*.

employee benefit plans under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) …").

34. USI Insurance exercised discretionary, authority and control over the management and administration of the voluntary benefits program, including by establishing the voluntary benefits program, selecting and retaining itself as the primary broker for the voluntary benefits program, promoting the voluntary benefits program during annual open enrollment through company-wide communications and enrollment materials distributed to employees in its, *inter alia*: 1) 2020 Benefits at a Glance, Open Enrollment For Candidates (Exhibit A); 2) USI Insurance Disability and Leave Policy, revised: February 2020 (Exhibit B); 3) October 2021 letter to USI associate (Exhibit C); 4) 2022 Open Enrollment Information (Exhibit D); 5) October 2024 letter to USI Team Member (Exhibit E); 6) 2025 Open Enrollment Information (Exhibit F); 7) October 2025 letter to USI Team Member (Exhibit G); and 8) 2026 Open Enrollment Information (Exhibit H).

35. Further, participant communications for the voluntary benefits are through USI Insurance's Benefits Service Center via telephone with a live person or email at Benefits.ServiceCenter@usi.com.

36. USI Insurance's actions in recommending, selecting, and retaining insurers and products; structuring and receiving compensation tied to participant-paid premiums; and influencing plan administrative processes with respect to voluntary benefits, all constitute fiduciary conduct.

37. Further, through its actions, USI Insurance has endorsed the services provided under the Plan, thus subjecting its actions, and the Plan itself, to governance under ERISA.

### B. USI Insurance Had/Has Fiduciary Responsibilities Concerning the Administration of the Voluntary Benefit Plans

38. An entity "is a fiduciary with respect to a plan" if it "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

39. Under ERISA, employers have a duty to select insurers for their employees with care. *Radford Tr. v. First UNUM Life Ins. Co. of Am.*, 321 F. Supp. 2d 226, 249 (D. Mass. 2004).

40. Plan sponsors who choose service providers for a plan have a fiduciary duty to diligently and prudently select such providers, including voluntary insurance benefit administrators. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114 (2008) (describing the process of "buy[ing] insurance for others" in an ERISA-governed plan, including selecting an administrator and evaluating rates and claims processing ability); *see also* 29 U.S.C. § 1002(21) (stating that a fiduciary is one who exercises "discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets").

41. USI Insurance, in addition to being the Plan administrator, held itself out as the broker and consultant for the Plan with respect to the selection, marketing, and placement of voluntary benefit products, including soliciting proposals, evaluating carriers, recommending products, negotiating terms, facilitating enrollment, and arranging compensation structures.

42. In performing these functions, USI Insurance exercised discretionary authority and control over plan management and/or plan assets, rendered advice for a fee or other compensation with respect to the selection and retention of insurers and products, and had discretionary responsibility in plan administration related to voluntary benefits.

43. USI Insurance arranged, received, and retained compensation in the form of commissions and other consideration embedded in participant-paid premiums. *See* Schedule A's attached to 2020-2024 Form 5500s for the Plan.

44. The commissions and administration fees paid to USI Insurance were tied to the volume or amount of participant-paid premiums, and were paid by parties dealing with the plan—namely the insurance carriers—in connection with transactions involving plan assets.

45. Plaintiffs and other participants elected certain voluntary benefits and paid premiums through payroll deductions, which constituted plan assets because participant contributions were held by or on behalf of the Plan for the purpose of providing benefits and defraying reasonable Plan administrative expenses.

46. USI did not simply receive a commission independently determined and paid by the carrier from general assets. Upon information and belief: USI determined or negotiated the compensation it would receive; the carrier incorporated that compensation into the premium quoted to the Plan; USI, acting as the Plan fiduciary responsible for carrier/product selection, then caused the Plan to accept the resulting premium; participants' payroll contributions funded that premium; and the carrier remitted the predetermined portion of those payments to USI. The premium deducted from participants' wages therefore included an identifiable economic charge attributable to USI Insurance's compensation.[9]

---

[9] Nevertheless, even if an insurance carrier obtained title to premium amounts before remitting USI Insurance's commission, ERISA § 406(b)(3) separately prohibits a fiduciary from receiving consideration for its own account from a party dealing with the Plan in connection with a transaction involving Plan assets. The commissions alleged here were paid by the insurance carriers because of, and in connection with, the Plan insurance transactions and the participant contributions which were used to purchase the insurance coverage.

47. The conflict inherent in this arrangement was direct. In negotiating or selecting a voluntary benefit program, USI Insurance had a fiduciary interest in obtaining favorable terms and lower costs for Plan participants, while simultaneously having a corporate financial interest in maximizing the commissions and fees payable to itself. To the extent a carrier incorporated USI Insurance's requested compensation into the premium, reducing USI Insurance's compensation would reduce the amount that had to be recovered through participant premiums, all else being equal.

48. ERISA required USI Insurance to resolve that conflict in favor of the Plan and its participants and prohibited USI Insurance from using fiduciary authority over Plan transactions to generate additional compensation for itself. USI Insurance instead selected and retained arrangements under which it received compensation tied to the participant-funded insurance products over which it exercised fiduciary authority.

49. USI Insurance failed to avoid self-dealing and conflicts of interest, and failed to ensure that any compensation received from parties dealing with the plan complied with ERISA's strict prohibitions under 29 U.S.C. § 1106(b), such as by obtaining appropriate authorization and ensuring that any compensation did not result from USI Insurance acting in any transaction involving the Plan on behalf of a party whose interests were adverse to those of the Plan and its participants.

50. Defendant's compensation structure and receipt of commissions and fees influenced or had the tendency to influence its recommendations and actions regarding the selection, marketing, and placement of voluntary benefits, and the level and cost of those benefits to participants

51. No independent Plan fiduciary is identified in the Plan's Form 5500 filings or participant materials as having independently negotiated, approved, or monitored USI Insurance's broker compensation for the challenged voluntary-benefit products. Plaintiffs allege, on information and belief, that USI Insurance did not establish an effective independent-fiduciary process to determine whether USI should receive compensation from these transactions or, if so, the amount and structure of such compensation

**C. USI Insurance's Voluntary Benefits Program**

52. At the start of the Class Period, the Plan had 8,177 participants. *See* 2020 Form 5500 for the Plan, at 2.

53. By 2024, the Plan had 10,500 participants. *See* 2024 Form 5500 for the Plan, at 2.

54. The insurance carriers for the voluntary benefits have remained the same since the start of the Class Period, and in some instances, well before the Class Period.

55. As discussed above, and at all relevant times, USI Insurance acted as a fiduciary of the voluntary benefits program.

56. During the Class Period, USI Insurance, directly or through affiliated entities, received broker commissions and administration fees in amounts identified in the table below.

| Plan Year | Commissions Paid | Administration Fees Paid | Total Commission and Administration Fees Paid |
|---|---|---|---|
| 2024 | $826,759 | $14,657 | $841,416 |
| 2023 | $825,056 | $15,104 | $840,160 |
| 2022 | $622,800 | $20,214 | $643,014 |
| 2021 | $516,305 | $10,053 | $526,358 |
| 2020 | $592,286 | $14,670 | $606,956 |
| **TOTAL** | **$3,383,206** | **$74,698** | **$3,457,904** |

### 1. USI Insurance Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Life Insurance, Long-Term Disability and Accidental Death & Dismemberment Plan

57. At all relevant times, USI Insurance acted as a fiduciary by administering and selecting the life insurance, long-term disability and accidental death & dismemberment voluntary insurance policies available to participants.

58. Since 2016, Prudential Insurance Company of America ("Prudential") was the insurance carrier for the life insurance, long-term disability and accidental death & dismemberment voluntary insurance policy.

59. Notably, no commissions were paid from the employee paid premiums for the life insurance, long-term disability and accidental death & dismemberment voluntary insurance policy in 2016, the first year it was offered.

60. Starting in 2017, USI Insurance Services LLC collected commissions for the premiums paid for the life insurance, long-term disability and accidental death & dismemberment voluntary insurance policy, as demonstrated in the table below.

| **Plan Year** | **Life, LTD, and AD&D Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 10,501 | $200,000 | $8,713,420 |
| 2023 | 10,420 | $200,000 | $8,713,420 |
| 2022 | 9,755 | $200,000 | $7,365,924 |
| 2021 | 8,445 | $200,000 | $6,364,568 |
| 2020 | 8,173 | $200,000 | $6,043,383 |
| 2019 | 7,420 | $95,243 | $5,758,275 |
| 2018 | 7,350 | $75,483[10] | $5,113,607 |
| 2017 | 5,389 | $12,352 | $2,961,836 |
| 2016 | 4,241 | $0 | $2,550,602 |
| **TOTAL** | | **$1,183,078** | |

[10] For 2018 and 2019 the commission paid were identified as "Supplement Commissions." *See* 2018 and 2019 Form 5500 for the Plan.

61. Interestingly, at the start of the Class Period and for no reason whatsoever, other than profiting from its employees and Plan participants, USI Insurance started collecting a flat $200,000 commission for each year until at least 2024.[11] Aside from a small increase in the number of participants, there were no changes to the life insurance, long-term disability and accidental death & dismemberment voluntary insurance policy offered by Prudential since 2016.

### 2. USI Insurance Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Accident Plan

62. At all relevant times, USI Insurance acted as a fiduciary by administering and selecting the accident voluntary insurance policies available to participants.

63. From 2014 through 2024, the First Unum Life Insurance Company was the insurance carrier for USI Insurance's accident voluntary insurance policies.[12]

64. From 2014 to 2016, no administration fees were paid to USI Insurance or any of its affiliates. During that same period of time, Custom Benefit Programs, Inc.[13] received commissions.

---

[11] At the time the instant complaint was filed, 2025 and 2026 Form 5500s for the Plan were not publicly available.

[12] In 2014, USI Insurance identified the contract type as "Voluntary Benefits." *See* 2014 Form 5500 for the Plan. In 2015, USI Insurance identified the contract type as "Temporary Disability," and "Voluntary Benefits." *See* 2015 Form 5500 for the Plan. In 2016, USI Insurance identified the contract types as "Life Insurance," "Temporary Disability," and "Voluntary Benefits." *See* 2016 Form 5500 for the Plan. In 2017, USI Insurance identified the contract type as "Life Insurance," "Business Travel Accident," and "Accidental Death & Dismemberment." *See* 2017 Form 5500 for the Plan. From 2018 to 2020, USI Insurance identified the contract type as "Life Insurance," "Accidental Death & Dismemberment," and "Accident." *See* 2018 - 2020 Form 5500s for the Plan. In 2021, USI Insurance identified the contract type as "Life Insurance," and "Accident." *See* 2021 Form 5500 for the Plan. From 2022 to 2024, USI Insurance identified the contract type as "Accident." *See* 2022 - 2024 Form 5500s for the Plan.

[13] Custom Benefit Programs, Inc. is a corporate subsidiary of USI Holdings Corporation, making it a sister company or affiliate within the broader corporate structure of USI Insurance Services LLC.

65. As demonstrated in the table below, and starting in 2014 and continuing to 2024, USI Insurance and/or its affiliates received commissions and administration fees for the accident voluntary benefits plan.

| **Plan Year** | **Accident Plan Participants** | **Amt. Commissions Paid** | **Amt. Administration Fees Paid** | **Total Commission and Administration Fees Paid** | **Total Premium** |
|---|---|---|---|---|---|
| 2024 | 4,113 | $73,538 | $14,657 | $88,195 | $468,297 |
| 2023 | 3,862 | $75,795 | $13,015 | $88,810 | $443,392 |
| 2022 | 6,398 | $134,480 | $10,226 | $144,706 | $398,794 |
| 2021 | 3,309 | $42,317 | $8,547 | $50,864 | $382,429 |
| 2020 | 1,289 | $56,218 | $11,192 | $67,410 | $382,429 |
| 2019 | 4,215 | $52,290 | $10,137 | $62,427 | $358,600 |
| 2018 | 2,901 | $89,152 | $19,946 | $109,098 | $358,600 |
| 2017 | 1,184 | $71,454 | $12,920 | $84,374 | $161,949 |
| 2016 | 9 | $2,678 | $0 | $2,678 | $5,746 |
| 2015 | 6 | $120 | $0 | $120 | $2,391 |
| 2014 | 6 | $145 | $0 | $145 | $2,685 |
| **TOTAL** | | **$598,187** | **$100,640** | **$698,827** | |

66. The percentage of the premiums that were paid to USI Insurance or its affiliates for commissions from 2020 and 2021 was 14.70% and 11.07% respectively. However, the percentage of the premiums that were paid to USI Insurance or its affiliates jumped to 33.72%, indicating that USI Insurance structured a heaped commission for this voluntary benefit. In 2023, the percentage of premiums that were paid to USI Insurance or its affiliates dropped to 17.09%.

**3. USI Insurance Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Life Insurance Plan**

67. From 2021 through 2024, USI Insurance acted as a fiduciary by administering and selecting the life insurance voluntary insurance policies available to participants.

68. During that period of time, Massachusetts Mutual Life Insurance Company was the insurance carrier for USI Insurance's life insurance voluntary insurance policies.

69. USI Insurance Services, LLC collected commissions from the premiums paid by participants in the plan.

70. The table below demonstrates the total commissions paid to USI Insurance Services, LLC for the life insurance voluntary insurance policy.

| **Plan Year** | **Life Insurance Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 1,208 | $252,099 | $966,873 |
| 2023 | 1,026 | $222,747 | $782,182 |
| 2022 | 279 | $71,017 | $257,093 |
| 2021 | 562 | $89,044 | $335,489 |
| **TOTAL** | | **$634,907** | |

**4. USI Insurance Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Long Term Care Plan**

71. At all relevant times, USI Insurance acted as a fiduciary by administering and selecting the long term care voluntary insurance policies available to participants.

72. From 2014 through 2024, the Unum Life Insurance Company of America was the insurance carrier for USI Insurance's accident voluntary insurance policies.

73. As demonstrated in the table below, and starting in 2014 and continuing to 2024, USI Insurance and/or its affiliates received commissions and administration fees for the accident voluntary benefits plan.

| **Plan Year** | **Long Term Care Plan Participants** | **Amt. Commissions Paid** | **Amt. Administration Fee Paid** | **Total Commission and Administration Fees Paid** | **Total Premium** |
|---|---|---|---|---|---|
| 2024 | 145 | $32,549 | $0 | $32,549 | $229,706 |
| 2023 | 162 | $58,906 | $0 | $58,906 | $409,326 |
| 2022 | 316 | $65,285 | $0 | $65,285 | $436,010 |
| 2021 | 297 | $63,757 | $0 | $63,757 | $412,136 |
| 2020 | 277 | $44,189 | $0 | $44,189 | $278,404 |

| | | | | | |
|---|---|---|---|---|---|
| 2019 | 260 | $36,694 | $0 | $36,694 | $245,171 |
| 2018 | 138 | $33,241 | $0 | $33,241 | $225,801 |
| 2017 | 137 | $26,652 | $0 | $26,652 | $178,372 |
| 2016 | 270 | $26,160 | $86 | $26,246 | $187,681 |
| 2015 | 119 | $26,544 | $2,302 | $28,846 | $180,128 |
| 2014 | 228 | $22,765 | $1,880 | $24,645 | $161,067 |
| **TOTAL** | | **$436,742** | **$4,268** | **$441,010** | |

### 5. USI Insurance Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Life Insurance and Critical Illness Plan

74. From 2014 through 2016, and from 2018 through 2022, USI Insurance acted as a fiduciary by administering and selecting the life insurance and critical illness voluntary insurance policies available to participants.

75. During that period of time, Provident Life and Accident Insurance Company was the insurance carrier for USI Insurance's life insurance and critical illness voluntary insurance policies.[14]

76. USI Insurance Services, LLC or its affiliates collected commissions and administration fees from the premiums paid by participants in the Plan.

77. The table below demonstrates the total commissions paid to USI Insurance or its affiliates for the life insurance and critical illness voluntary insurance policy.

| Plan Year | Life Ins. And Critical Illness Plan Participants | Amt. Commissions Paid | Amt. Administration Fees Paid | Total Commission and Administration Fees Paid | Total Premium |
|---|---|---|---|---|---|

[14] In 2014, USI Insurance identified the contract type as "Temporary Disability," and "Critical Illness." *See* 2014 Form 5500 for the Plan. In 2015 and 2016, USI Insurance identified the contract type as "Life Insurance," "Temporary Disability," and "Critical Illness." *See* 2015 and 2016 Form 5500s for the Plan. In 2018, USI Insurance identified the contract types as "Life Insurance." *See* 2018 Form 5500 for the Plan. From 2019 through 2022, USI Insurance identified the contract type as "Life Insurance," and "Critical Illness." *See* 2019-2022 Form 5500s for the Plan.

| | | | | | |
|---|---|---|---|---|---|
| 2022 | 242 | $1,172 | $0 | $1,172 | $42,759 |
| 2021 | 246 | $2,387 | $1,496 | $3,883 | $49,615 |
| 2020 | 165 | $222,585 | $3,478 | $226,063 | $1,408,736 |
| 2019 | 160 | $18,837 | $7,783 | $26,620 | Unknown |
| 2018 | 131 | $12,312 | $1,256 | $13,568 | $36,762 |
| 2016 | 117 | $23,790 | $0 | $23,790 | $103,333 |
| 2015 | 145 | $11,303 | $3,126 | $14,429 | $94,041 |
| 2014 | 192 | $8,895 | $1,958 | $10,853 | $89,479 |
| **TOTAL** | | **$301,281** | **$19,097** | **$320,378** | |

### 6. USI Insurance Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Telehealth Plan

78. Since 2014, Teladoc was the insurance carrier for the telehealth voluntary insurance policy.

79. At times from 2014 through 2020, the telehealth plan was an employer paid plan.

80. In some years (2014, 2025 and 2018) and since 2021, the telehealth plan was an employee paid plan.

81. However, it was only in 2021 and going forward when USI Insurance started collecting commissions from the premiums paid by the Plan's participants, which dramatically increased from just over $9,000 in 2022 to well over $100,000 in 2023 and 2024, as demonstrated in the table below.

| **Plan Year** | **Telehealth Plan Participants** | **Amt. Commissions Paid** | **Total Premium**[15] |
|---|---|---|---|
| 2024 | 10,500 | $143,882 | $1,143,323 |
| 2023 | 15,697 | $129,676 | $167,248 |
| 2022 | 7,119 | $9,230 | $361,969 |
| 2021 | 8,188 | $7,443 | $190,042 |
| 2020 | 12,112 | $0 | |
| 2019 | 11,809 | $0 | |
| 2018 | 11,388 | $0 | $121,444 |

[15] For blank entries, the Schedule A attached to the Form 5500s did not identify the total premium.

| | | | |
|---|---|---|---|
| 2017 | 8,564 | $0 | |
| 2016 | 9,788 | $0 | |
| 2015 | 9,981 | $0 | $74,390 |
| 2014 | 9,467 | $0 | $66,179 |
| **TOTAL** | | **$290,231** | |

**7. USI Insurance Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Critical Illness Plan**

82. From 2021 through 2024, USI Insurance acted as a fiduciary by administering and selecting the critical illness voluntary insurance policies available to participants.

83. During that period of time, Provident Life and Casualty Insurance Company was the insurance carrier for USI Insurance's critical illness voluntary insurance policies.

84. USI Southwest, Inc., USI Insurance Services Southwest, or USI Insurance Services, LLC collected commissions from the premiums paid by participants in the plan.

85. The table below demonstrates the total commissions paid to USI Insurance or its affiliates for the critical illness voluntary insurance policy.

| **Plan Year** | **Critical Illness Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 3,175 | $65,115 | $651,154 |
| 2023 | 2,909 | $52,837 | $528,373 |
| 2022 | 2,371 | $52,288 | $522,884 |
| 2021 | 1,614 | $22,982 | $229,825 |
| **TOTAL** | | **$193,222** | |

86. Interestingly, the percentage of the premiums that were paid to USI Insurance, or its affiliates from 2021 to 2024 was exactly 10%.

**8. USI Insurance Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Vision Plan**

87. Since 2014, Vision Service Plan was the insurance carrier for the vision voluntary insurance policy.

88. Since that time, USI Insurance Services, LLC[16] collected commissions from the premiums paid by participants.

89. The table below demonstrates the total commissions paid to USI Insurance or its affiliates since 2014.

| **Plan Year** | **Vision Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 6,969 | $9,857 | $1,330,940 |
| 2023 | 7,045 | $9,019 | $1,309,057 |
| 2022 | 6,424 | $9,293 | $1,183,080 |
| 2021 | 5,903 | $9,868 | $1,134,303 |
| 2020 | 5,667 | $10,355 | $1,144,246 |
| 2019 | 5,368 | $8,765 | $1,127,265 |
| 2018 | 5,314 | $8,605 | $1,087,048 |
| 2017 | 4,942 | $6,664 | $609,681 |
| 2016 | 2,816 | $6,724 | $542,378 |
| 2015 | 2,861 | $6,646 | $520,905 |
| 2014 | 2,780 | $5,756 | $388,061 |
| **TOTAL** | | **$91,552** | |

### 9. USI Insurance Committed Prohibited Transactions and Breached its Fiduciary Duties by Selecting the Business Travel Accident Plan

90. At all relevant times, USI Insurance acted as a fiduciary by administering and selecting the business travel accident voluntary insurance policies available to participants.

91. Since 2014, National Union Fire Insurance Company of Pittsburgh, PA ("National Union") was the insurance carrier for the business travel accident voluntary insurance policy.

92. Prior to the start of the Class Period, no commissions were paid from participants' premiums in the Plan. However, at the start of the Class Period in 2020 and continuing throughout

[16] From 2017 through 2019, USI Southwest, Inc., a wholly owned subsidiary of USI Insurance Services, LLC, received the commission from the total premiums paid by participants. For all other years since 2014, the commissions were paid to USI Insurance Services, LLC.

the Class Period, USI Insurance Services, LLC collected commissions from the premiums paid by participants in the plan.

93. The table below demonstrates the total commissions paid to USI Insurance or its affiliates for the business travel accident voluntary insurance policy.

| **Plan Year** | **Business Travel Accident Plan Participants** | **Amt. Commissions Paid** | **Total Premium** |
|---|---|---|---|
| 2024 | 10,500 | $17,170 | $68,679 |
| 2023 | 10,418 | $17,170 | $68,679 |
| 2022 | 9,755 | $14,750 | $59,000 |
| 2021 | 8,441 | $14,750 | $59,000 |
| 2020 | 8,177 | $14,750 | $59,000 |
| 2019 | 7,420 | $0 | $59,072 |
| 2018 | 7,350 | $0 | $59,072 |
| 2017 | 0 | $0 | $32,120 |
| 2016 | 3,484 | $0 | $33,927 |
| 2015 | 3,456 | $0 | $33,927 |
| 2014 | 3,379 | $0 | $33,927 |
| **TOTAL** | **$78,590** | | |

94. Interestingly, the percentage of the premiums that were paid to USI Insurance from 2020 to 2024 was exactly 25%.

**10. USI Insurance and/or Its Affiliates Collected Millions of Dollars in Commissions and Administration Fees from Plan Participants During the Class Period**

95. The table below demonstrates the total amount of commissions and administration fees USI Insurance or its affiliates received from the premiums paid by its employees who chose to participate in the various voluntary benefits plans.

| Plan Year | Commissions Paid | Administration Fees Paid | Total Commission and Administration Fees Paid |
|---|---|---|---|
| 2024 | $826,759 | $14,657 | $841,416 |
| 2023 | $825,056 | $15,104 | $840,160 |
| 2022 | $622,800 | $20,214 | $643,014 |
| 2021 | $516,305 | $10,053 | $526,358 |
| 2020 | $592,286 | $14,670 | $606,956 |
| **TOTAL** | **$3,383,206** | **$74,698** | **$3,457,904** |

96. USI Insurance violated 29 U.S.C. § 1106(b)(1) by dealing with the assets of the plan in its own interest or for its own account when it caused or allowed the payment of commissions and administration fees to itself derived from participant-paid premiums that were Plan assets or derived from transactions involving Plan assets.

97. USI Insurance violated 29 U.S.C. § 1106(b)(2) by acting in a transaction involving the Plan on behalf of a party whose interests were adverse to the interests of the Plan or its participants and beneficiaries, including insurers and other parties dealing with the Plan from whom USI Insurance received compensation tied to participant-paid premiums.

98. USI Insurance violated 29 U.S.C. § 1106(b)(3) by receiving consideration for its own personal account from parties dealing with the Plan in connection with transactions involving the assets of the Plan, including commissions and administration fees paid by insurance carriers and/or embedded in participant-paid premiums.

99. USI Insurance's receipt and retention of commissions and other consideration were not subject to any exemption applicable to fiduciaries engaged in self-dealing prohibited by § 1106(b), and, in any event, were not properly authorized, disclosed, or structured to satisfy ERISA's requirements.

100. USI Insurance's conduct was knowing, willful, or at least reckless, and undertaken in disregard of its fiduciary obligations of loyalty, resulting in excessive and undisclosed compensation and harm to the Plan and its participants.

101. As a direct and proximate result of USI Insurance's conduct, Plaintiffs and the Plan suffered losses, including but not limited to excessive charges embedded in premiums, diminished Plan and participant assets, and the loss of value and loyalty owed by a fiduciary operating free of self-dealing.

**COUNT I**
**Prohibited Transactions and Self-Dealing in Violation of ERISA § 406(b), 29 U.S.C. § 1106(b)**

102. USI Insurance, as a fiduciary, violated 29 U.S.C. § 1106(b)(1) by dealing with the assets of the Plan in its own interest or for its own account by arranging, receiving, and retaining commissions and administration fees derived from participant-paid premiums and transactions involving Plan assets.

103. USI Insurance, as a fiduciary, violated 29 U.S.C. § 1106(b)(1) by dealing with the assets of the Plan in its own interest or for its own account by arranging, receiving, and retaining commissions and administration fees derived from participant-paid premiums and transactions involving Plan assets.

104. USI Insurance, as a fiduciary, violated 29 U.S.C. § 1106(b)(2) by acting in transactions involving the Plan on behalf of parties whose interests were adverse to the Plan and its participants, including insurance carriers and other counterparties from whom USI Insurance received compensation tied to Plan-related premium flows.

105. USI Insurance, as a fiduciary, violated 29 U.S.C. § 1106(b)(3) by receiving consideration for its own personal account from parties dealing with the plan in connection with

transactions involving the assets of the Plan, including commissions and administration fees paid by insurers and/or embedded in participant-paid premiums.

106. As a result of these violations, USI Insurance is liable for appropriate equitable relief under 29 U.S.C. § 1132(a)(2) and/or (a)(3), including restitution, disgorgement of all compensation and profits, surcharge, and injunctive and other equitable relief, as well as for attorneys' fees and costs under 29 U.S.C. § 1132(g).

**COUNT II**
**Breaches of Fiduciary Duty of Loyalty**

107. Plaintiffs reallege and incorporate by reference the foregoing allegations.

108. In addition to the above and/or in the alternative, as a fiduciary of the Plan, USI Insurance breached its fiduciary duty of loyalty by placing its own interests in receiving commissions ahead of the interests of the Plan and participants, failing to avoid prohibited conflicts, and failing to act solely in the interest of participants and beneficiaries for the exclusive purpose of providing benefits and defraying reasonable plan administrative expenses.

109. As a fiduciary of the Plan, USI Insurance was subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

110. Pursuant to 29 U.S.C. § 1104(a)(1)(A), USI Insurance was required to discharge its duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

111. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars in losses.

112. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), USI Insurance is liable to restore to the Plan all losses caused by its breaches of fiduciary duties, and also must restore any profits

resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendant's breaches as set forth in their Prayer for Relief.

113. Plaintiffs seek equitable relief under 29 U.S.C. § 1132(a)(2) and/or (a)(3), including restitution, disgorgement, surcharge, injunctive relief, removal of Defendant from any fiduciary role, appointment of an independent fiduciary, accounting, and other appropriate equitable remedies.

## PRAYER FOR RELIEF

114. WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A. A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B. Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C. A Declaration that the Defendants have breached their fiduciary duties under ERISA;

D. An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

E. An order requiring the Company to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, as necessary to effectuate said relief, and to prevent the Company's unjust enrichment;

F. Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants’ individual accounts in proportion to the accounts' losses;

G. An order enjoining Defendants from any further violations of its ERISA fiduciary responsibilities, obligations, and duties;

H. Other equitable relief to redress the Company's illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan fiduciaries deemed to have breached their fiduciary duties;

I. An award of pre-judgment interest;

J. An award of costs pursuant to 29 U.S.C. § 1132(g);

K. An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

L. Such other and further relief as the Court deems equitable and just.

Dated: September 8, 2026

Respectfully submitted,

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
PA Attorney ID #88587
James A. Maro, Esquire
PA Attorney ID #86420
(*Admissions Pro Hac Vice to be Requested)*
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Email: markg@capozziadler.com
jamesm@capozziadler.com
Tel.: (610) 890-0200
Fax: (717) 232-3080